E. B. KLEIN *v.* LEE RICHARDSON ET AL.

64  41
e85  253

DEED.  *Failure to record.  Fraudulent conveyance.  Creditors' rights.  Case in judgment.*

On December 23, 1882, J. and G. conveyed certain real estate to B., the wife of one and mother of the other.    The deed was not filed for record till November 20, 1883, at five o'clock P. M.    On November 21, 1883, at four o'clock A. M., J. and G. failed in business and made an assignment.  R., a creditor of J. and G., both before and after the conveyance to B., attached this property, and then filed the bill in equity in this case to have the conveyance set aside, on the ground of fraud.  *Held,* that the failure of B. to have her deed recorded, in the absence of any evidence connecting her with a fraudulent scheme on the part of J. and G., is not sufficient to vitiate the conveyance.

APPEAL from the Chancery Court of Warren County.

HON. WARREN COWAN, Chancellor.

Lee Richardson, R. A. Quinn, W. E. Otis, C. O. Willis, and the Vicksburg Bank, brought this suit in equity against Mrs. E. B. Klein.    The bill avers that complainants are judgment creditors of John A. Klein, Sr., and George M. Klein, constituting the "Mississippi Valley Bank;" that on November 21, 1883, this bank failed; that complainants immediately levied an attachment on certain real estate in the city of Vicksburg which they supposed to be the property of John A. Klein, Sr., and George M. Klein, to satisfy their claims against them; that after they had made their levy they discovered for the first time that a deed to the property attached had been filed for record at five o'clock on November 20, 1883, the day before the failure of the bank, purporting to convey this property to Mrs. E. B. Klein, wife of John A. Klein and mother of George M. Klein; and that this deed purports to have been executed on December 23, 1882, for a consideration of twenty-four thousand dollars cash paid.    The bill charges that this deed was executed without any good and lawful consideration, with intent to hinder, delay, and defraud existing and subsequent creditors of the "Mississippi Valley Bank," including complainants; that if the deed was in fact executed on the day and for the consideration named, it was purposely with-

held from record by Mrs. E. B. Klein with the intent to give the Kleins and their bank a credit to which they were not entitled, and that complainants were induced to deal with them and to extend them credit on the belief that they were still owners of this property. The bill prays that this deed from the Kleins to Mrs. E. B. Klein be cancelled, and that the property be sold to satisfy the judgments of complainants, unless Mrs. Klein pay the same. Mrs. E. B. Klein answered, setting up that the deed was made and delivered on December 23, 1882, the day on which it purports to have been executed; that she paid her husband and son twenty-four thousand dollars cash for the same, more than twenty thousand dollars of which she received from her mother's estate, and the balance was money which she had to her credit in the bank; that the conveyance was not made to hinder, delay, or defraud creditors; that she did not have it recorded immediately because she did not know that it was necessary, and only had it recorded on November 20, 1883, because told to do so by her son, John Klein, and denying that she failed to record it in order to give credit to the Kleins and their bank.

The evidence all tended to show that the deed was made on the day and for the consideration named, and that the money was derived from the source stated by the defendant in her answer. The opinion of the court sets out the proof on the contested points.

The Chancellor found for the complainants and granted the relief asked. The defendant appealed.

*Shelton & Crutcher*, for the appellant.

Omitting entirely the purpose of George M. Klein in making the sale, and admitting for argument sake that his purpose was to hinder, delay, or defraud his creditors, still, having shown the fact that the deed was based on a consideration valuable in law, it now devolves on appellees to show that the Kleins were then insolvent or in failing circumstances, and were making this sale for the purpose of converting their property into money and placing it beyond the reach of their creditors, and that Mrs. Klein either knew this, or was possessed of information reasonably calculated to stimulate inquiry, which, if followed up, would disclose the fact that the

Kleins' purpose was to place their property beyond the reach of creditors, etc.   *Crawford* v. *Kirksey*, 28 Am. Rep. 709.

This case is entirely different from *Hilliard* v. *Cagle*, 46 Miss., in these respects.   In that case there was a positive agreement to withhold the deed from record because both parties knew that to record it would destroy the merchant's credit.   In this case no such fact is shown.   In that case the deed covered the whole of the merchant's property, and a reasonable man would conclusively.be presumed to know that the recording of such a deed must destroy the mortgagor's credit.   In this case the property bore but a small proportion to the large unincumbered property retained, and no person could be presumed to infer that such a sale would affect the vendor's credit.   In *Hilliard* v. *Cagle* the transaction was extraordinary—out of the usual course of business.   In this case it was but an every-day transaction and in the usual course of the vendor's business.   Without positive proof that there was an agreement to withhold from record because it was known that the record would affect the vendor's credit, no such agreement, intention, or purpose can be inferred unless the facts were such that a reasonable person must be held to have known that a record of the deed would affect credit.

*Birchett & Gilland*, on the same side.

1. If the deed was made by the vendors with intent to defraud their creditors, did appellant participate in the fraudulent intent ? Did she know of their intent ?

To render a conveyance fraudulent and voidable as against creditors, where the vendee has paid a valuable consideration therefor, there must have been mutuality of participation in the fraudulent intent on the part of both vendor and purchaser.   *Surget* v. *Boyd*, 57 Miss. 485 ; *Harris* v. *Lombard*, 60 Miss. 32.

Appellees have failed to introduce any testimony tending to prove any knowledge on the part of appellant of the insolvency of the bank or the copartners, or to show any fact within her knowledge which would even lead her to suspect such insolvency.

2. Did appellant *purposely* withhold the deed from record to deceive appellees?

To be entitled to any relief, appellees must prove that the deed was by appellant purposely kept from record, in order to give to J. A. & G. M. Klein false credit by the apparent ownership of this property, and that they (appellees) contracted their debts on the faith of such ownership. *Hilliard* v. *Cagle*, 46 Miss. 309 ; *Blennerhassett* v. *Sherman*, 105 U. S. 100. Appellees have failed to offer any proof tending to show that appellant withheld the deed from record for the purpose of giving the Kleins a false credit.

*J. D. Gilland*, of counsel for the appellant, argued the case orally.

*A. B. Pittman*, on the same side.

Assuming, for the purpose of this argument, that the appellant was guilty of no sort of intentional deception, the proposition decided by his honor, the Chancellor, amounts to this—that if a grantee, without purpose to deceive, negligently omits to record his deed for a time, during which some one extends credit to the grantor in the usual course of business without acquiring a lien on the granted property, but in the belief that the grantor still owns it, such creditor is thereby defrauded, and can subject the property as against the grantee.

It must be admitted that the fluent author of the opinion in *Hilliard* v. *Cagle* has given warrant for this extraordinary proposition, yet it may be safely said from the entire opinion that its author did not intend to commit himself to such an idea. It is elementary learning that no man is responsible for the accidental and remote consequences of his acts lawfully done, still less is he responsible for the accidental and remote consequences of his omission to do what no duty or law required of him.

In the case of *Hilliard et al.* v. *Cagle*, 46 Miss. 309, the testimony showed conclusively a fraudulent and collusive arrangement between the mortgagor and mortgagee. The mortgagee held up and sustained the credit of the mortgagor for the express purpose of enabling him to borrow money and to buy cotton and goods on a credit, in order that the mortgagees who withheld the mortgage from record by special agreement might pounce down on everything at a favorable moment and appropriate it all to themselves. There

was a special agreement that the mortgage should be kept a profound secret. When it was finally sent for record the mortgagee asked the clerk of the court to keep it a secret and not to call attention to it. Judge Simrall states these facts with great force. He says also, " There was testimony that Summers actively promoted the sale of goods to Baggett, after the deed was executed and before it was recorded." Yet the learned judge uses this language : " The testimony does not convince us that the arrangement was made, with a fraudulent scheme and purpose, to defeat existing or future creditors. This was not the primary motive. Summers and Brannin desired that Baggett should continue his business as before, but at the time they were anxious that they should be protected at all events, and in any contingency. If misfortune and calamity should fall upon him, their purpose was to be secure."

This extraordinary language seems to have been used more as a salve for wounded feelings, as it is at war with the facts of the case and with the rest of the opinion. The robbery of the victim is not the " primary motive " of the robber ; it is to secure the booty. So the object of one who defrauds is not to injure his victim, but rather to secure a benefit to himself by injuring his victim. The language which I have quoted, therefore, has no tendency but to mislead, for the fraudulent collusion between the parties is not only evident and conspicuous, but is the sole foundation of the opinion.

*A. B. Pittman* also made an oral argument.

*R. S. & L. N. Buck,* for the appellees.

1. This deed was made on the 23d day of December, 1882, but was withheld from record by Mrs. Klein until eleven months after, and was then, at five o'clock the evening before the failure of the bank, placed upon record, just in time to meet the financial storm which was then about to burst upon the creditors of the Valley Bank.

We say that the withholding of this deed from record, as the court may infer from the testimony, from the date of its execution to the time when it went upon the records of the county, and, as we think the proof will show, with the connivance of the grantors in the deed, and the grantee's acquiescence, operated as a fraud

upon these complainants, which a court of equity will refuse to sanction, but will hold Mrs. Klein estopped by the peculiar circumstances of the case, at least so far as these complainants are concerned, from retaining any advantage that might result to her if the transaction had been perfectly fair in all of its particulars; and even if we should fail to show collusion on the part of Mrs. Klein and her son, the facts as proved show, we think, conclusively that, so far as these complainants are concerned, they had as much that effect as if it was intended upon the part of Mrs. Klein and her son.

We find this equitable doctrine laid down by the supreme court of this State : " When silence becomes a fraud it will operate as an estoppel. But no precise definition of fraud has been attempted in equity, lest knavish ingenuity should avoid it, each case in which the doctrine of estoppel by conduct is invoked being left to be determined by its own peculiar circumstances." *Staton* v. *Bryant,* 55 Miss. 261.

2. We wish to refer the court to the case of *Hilliard et al.* v. *Cagle et al.,* reported in 46 Miss. 309, and to show how exactly analogous to the case at bar it is, not only as to facts of the case, but in the principle of law, as announced by the opinion of the court, as being the rule that should govern in this case.

*Catchings & Dabney,* on the same side.

Can the appellant be heard to set up a claim under the deed, if the consideration was in fact paid as claimed by her ?

It has been shown that the appellant held the deed unrecorded until five o'clock P. M. on the day before the one on which the bank failed to open its doors and filed its assignment.

It appears also that every step was taken to prevent the public from knowing of the sale which could have been taken.

Consider also the fact that this was an absolute deed which must be recorded sometime. Why put it off? Why withhold possession after the sale?

If the deed was for security, and one which would become vacated by the payment of money or performance of other conditions, the failure to record would have been more easily explained.

This is a stronger case than *Hilliard* v. *Cagle*, 46 Miss. 309. In that case it was a deed of trust which was not recorded. In that case there was no testimony to the effect that the other creditors relied on the property as a source from which to collect their debts; but the court assumed such to be the case. In that case it was undoubtedly a real transaction between two business men trading with each other, being in no way kin or connected, and having no purpose to defraud another person.

The consideration was not questioned, the conveyance was not absolute, but a mere security, hence there would be no change of possession. It did not appear in that case that the grantor was insolvent. The only difference between the two cases favorable to the appellant is the fact that all the bank property was not conveyed. There are many differences against her.

*M. Dabney*, of counsel for the appellees, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

This record does not contain any evidence on which to impute to the appellant complicity in a scheme to defraud creditors, and therein this case differs materially from *Hilliard* v. *Cagle*, 46 Miss. 309, where the creditors were held to have participated with the debtor in a scheme of fraud which rendered void the deed of trust they had obtained, and withheld from record by agreement, both as to existing and subsequent creditors of the debtor. On that ground the deed of trust was held void. There is nothing in the conduct of the appellant, as disclosed by the record, inconsistent with the utmost good faith on her part. She bought and paid for the property, and trusted her husband and son, wherein she did as wives and mothers usually do. She did not have her deed recorded until the day before the attachments were levied, but that was time enough, if she was not a participant in a fraudulent scheme, and we fail to see that she was. Failure to file a deed for record may, like any other pertinent fact, be a circumstance in making up a conclusion as to the presence or absence of fraud, but all there is in it *per se* is the risk of a supervening right to or lien on the land.

*Decree reversed and bill dismissed at the cost of the appellees in both courts.*