STAMP *v*. BANNINGA.

1. ESTOPPEL—ACTION—ELECTION OF REMEDIES—EXECUTORS AND AD-
   MINISTRATORS.
      Where plaintiff claimed to be the owner of certain real
      estate by deed from his sister, his action against the ad-
      ministrator of her estate for rents collected and retained
      as part of the assets of the estate is not estopped by
      the fact that plaintiff took the initiative in probating her
      will; there being other property belonging to her estate,
      and plaintiff having early advised the administrator of
      his claim to the property in question.

2. SAME—ACTION—ILLEGAL CONTRACT.
      Where plaintiff had nothing to do with the renting of the
      property, his action for the rents collected is not barred
      by the fact that it was rented for purposes of prostitution.

Error to Muskegon; Vanderwerp (John), J.   Sub-
mitted April 27, 1922.   (Docket No. 76.)   Decided
December 29, 1922.   Rehearing denied March 23, 1923.

Case by Sidney L. Stamp against John H. Banninga
for the conversion of certain funds.   Judgment for
plaintiff.   Defendant brings error.   Affirmed

*Edward C. Farmer* and *John M. Dunham,* for appel-
lant.

*F. E. Wetmore,* for appellee.

MOORE, J.   It will be helpful to an understanding
of the litigation involved in this proceeding to read the
opinions in *Re Keene's Estate,* 189 Mich. 97 (Ann. Cas.
1918E, 367) ; *In re Keene's Estate,* 202 Mich. 646;
*Stamp* v. *Steele,* 209 Mich. 205.   While reading these
opinions it will be well to remember that the Frank

Maynard mentioned in the first named opinion, and the Sidney L. Stamp mentioned in the last two cases is one and the same person.

After the opinion in 209 Michigan was handed down, Mr. Stamp commenced the case now before us. It was tried by the circuit judge without a jury. He found findings of fact and law as follows:

"Findings of Fact.

"1. On the 30th day of June, 1909, Alice Stamp, then living but now dead, was the owner of property in the city of Muskegon, Michigan, described as 'Lot 3 and the west half of lot 2 of block 185 of the revised plat of the said city of Muskegon;' which said property was in fact number 91 and 95 East Webster avenue of the city of Muskegon.

"2. On the said 30th day of June, 1909, Alice Stamp gave said property together with the contents of the buildings thereon, to the plaintiff in this case evidencing said gift by a paper writing.

"3. Alice Stamp died in December, 1913, and Gustave Neumaster was appointed as special administrator of her estate and qualified and erroneously listed the above property as a part of the estate of said Alice Stamp, and collected as rents from said property the sum of $600.

"4. On the 1st day of September, 1914, John H. Banninga, the defendant, was appointed executor of said estate and at that time the said Gustave Neumaster paid over to him the said sum of $600 which he had collected as rent for said premises.

"5. At about this time the plaintiff informed the said John H. Banninga, the defendant, that he, the plaintiff, owned said premises and requested possession thereof, which was refused by the said defendant who took possession thereof, both plaintiff and his wife at all times objected to the possession by the defendant of said premises and objected to his control thereof.

"6. Defendant insisting that he was entitled to the possession of said premises, and that the plaintiff had no rights therein, retained possession thereof and received from the tenants in possession of said buildings the sum of $150 per month for each month, beginning on the 21st day of September, 1914, and con-

tinuing until and including the 21st day of May, 1917, collecting said rents for 32 months and collecting the full sum of $4,800, in addition to the said sum of $600 which said defendant had received from the said Gustave Neumaster.

"7. That all of said money was and is the property of the plaintiff and was collected by the defendant without the consent of the plaintiff, and against his rights and wishes.

"8. That the defendant now has in his possession the sum of $5,400, belonging to the said plaintiff, and has had said sum since the 21st day of May, 1917.

"9. The plaintiff in this suit also declares against the defendant for certain household goods which he claims the defendant wrongfully took from him; the defendant denies having said goods, and I am not satisfied that he received them, and the plaintiff has not met the burden of proof in this regard and that part of his claim will be disallowed and he will take nothing thereby.

"10. The plaintiff only claims interest from May 21, 1921.

"Conclusions of Law.

"1. It follows that the plaintiff is entitled to a judgment against the defendant for the sum of $5,400 for the money which he has collected belonging to the plaintiff, together with interest thereon from and after the 21st day of May, 1917, at 5 per cent. per annum, which interest at this date amounts to the sum of $1,035, making a total of $6,435.

"2. The plaintiff is entitled to a judgment against the said defendant, John H. Banninga, in the sum of $6,435, with costs to be taxed.

"Let judgment be entered accordingly."

A motion was made that the court amend his findings. The court declined to do this and exceptions were duly taken. The case is here by writ of error.

Counsel say in their brief that the assignments of error raise but two questions:

"(1) Plaintiff is estopped from asserting his claim.
"(2) Plaintiff can not recover the payments on said illegal contract."

We quote from the brief of appellant's counsel:

"The general claim by appellant that plaintiff is estopped from asserting his alleged rights will be subdivided and discussed as follows:

(*a*)  Estoppel by records or judgments.
(*b*)  Estoppel by conduct and by silence.
(*c*)  Estoppel by election.

"(*a*)  It has been pointed out that plaintiff was the moving party in all of the steps to probate and administrate the estate, was a party to all of the proceedings and therefore is bound to know of the orders of the probate court and of the doings with reference to the estate."

(*b*)  Counsel insists that plaintiff remained silent when he should have spoken.

We again quote from the brief:

"(*c*)  Estoppel by election.

"A party cannot either in the course of litigation or in dealings *in pais* occupy inconsistent positions. Out of that rule has grown the doctrine of election.

"An election is made when a party with a knowledge of his rights and of all other facts material to him makes any decisive act. Bigelow on Estoppel (6th Ed.), 739; *Robb* v. *Vos,* 155 U. S. 13 (15 Sup. Ct. 4).

"Plaintiff Stamp with knowledge of his deed (if he actually had it), knowledge possessed by himself alone, proceeded to institute the probating of his sister's estate; succeeded in establishing her lost will; and with this same knowledge, allowed the estate to claim, handle and dispose of the property he now claims. He made a decisive act. He elected to establish her will under whose terms he and his family were beneficiaries. He cannot now occupy a contradictory and an inconsistent position in court. *Rowley* v. *Towsley,* 53 Mich. 329; *Thompson* v. *Howard,* 31 Mich. 312.

"Parties litigant cannot be permitted to thus change their front. They cannot play fast and loose."

*a.* It is true that plaintiff took the initiative in having the will of Mrs. Keene allowed and her estate

probated.   It is also true that there was other property than that claimed by the plaintiff in his sister's estate, so that we do not think it can be said that because he at one time wanted her will allowed, and her estate probated that he is estopped in this proceeding.   It is a curious fact that, though the instant case was tried in March, 1921, and the opinion in *Re Keene's Estate,* 202 Mich. 646, was filed in September, 1918, the present record does not show what was done in the probate court after that opinion was handed down.

The opinion written by Justice STONE in *Stamp* v. *Steele,* 209 Mich. 205, established title to the so-called Webster avenue property in Mr. Stamp.   It would seem to follow logically that he should be entitled to the rents thereof if any were paid.   The plaintiff and his wife testified that they advised defendant early of their claim of title to the Webster avenue property.   We quote from the plaintiff's testimony:

"*Q.* Did you tell him (Banninga) how you come to own this property on Webster avenue?
"*A.* I told him I owned it by a deed.
"*Q.* What did he say about that?
"*A.* He wouldn't listen to me.
"*Q.* Did you show him the deed that you had?
"*A.* I offered to show it to him.   *   *   *
"*Q.* What did he say when you offered to show it to him?
"*A.* He told me to shut my mouth;   *   *   *   that he did not want to listen to me at all."

Plaintiff further testified the defendant told him he was a dope fiend and that if he made any trouble he would take his children away from him and send the plaintiff to the insane asylum.   The trial judge found as a fact that they did tell defendant as claimed, and the record shows plaintiff and his wife refused to leave the Webster avenue property until legal proceedings were taken against them.

2. We now take up the second claim that plaintiff cannot recover the rents because they were paid to the defendant by tenants who were renting the houses for purposes of prostitution.   This claim would have force if the litigation was between the defendant and the tenants, but the record does not show that the plaintiff had anything to do with the illegal contracts.   We do not think defendant can avail himself of this defense.

Judgment is affirmed, with costs to the plaintiff.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.